**ALVERSON, TAYLOR,
MORTENSEN & SANDERS**
KURT R. BONDS, ESQ.
Nevada Bar #6228
ADAM R. KNECHT, ESQ.
Nevada Bar #13166
7401 W. Charleston Boulevard
Las Vegas, NV 89117
(702) 384-7000
efile@alversontaylor.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VOIP-PAL.COM, INC, a Nevada corporation,<br><br>  Plaintiff,<br><br>v.<br><br>LOCKSMITH FINANCIAL CORPORATION, INC., a British Columbia entity; TK INVESTMENT, a British Columbia entity; TALISMAN FINANCIAL, INC., a Belize entity; VHB INTERNATIONAL LTD., a Belize entity; CACTUS VENTURES, INC., a Belize entity; RICHARD G. KIPPING, an individual, TERRY KWAN, an individual; DOES I through X; and ROE ENTITIES XI through M, inclusive,<br><br>  Defendants. | CASE NO.:<br><br>**COMPLAINT** |

Plaintiff Voip-Pal.com, Inc. ("Plaintiff" or "Voip-Pal") alleges as follows:

**<u>PARTIES</u>**

1. Plaintiff Voip-Pal.com, Inc. is a Nevada corporation that, at all relevant times herein, was authorized to do business in the State of Nevada.

KRB/22677

1

2. Defendant Locksmith Financial Corporation, Inc. ("Locksmith") is a British Columbia corporation that, at all times relevant herein, was authorized to do business in British Columbia, Canada.

3. Defendant TK Investment ("TK Investment") is a British Columbia corporation that, at all times relevant herein, was authorized to do business in British Columbia, Canada.

4. Defendant Talisman Financial, Inc. ("Talisman Financial") is a Belize corporation that, at all times relevant herein, was authorized to do business in Belize.

5. Defendant VHB International Ltd. ("VHB International") is a Belize corporation that, at all times relevant herein, was authorized to do business in Belize.

6. Defendant Cactus Ventures, Inc. ("Cactus Ventures") is a Belize corporation that, at all times relevant herein, was authorized to do business in Belize.

7. Defendant Richard G. Kipping ("Kipping"), upon information and belief and at all relevant times herein, was and is a resident of Vancouver, British Columbia, Canada.

8. Defendant Terry Kwan ("Kwan"), upon information and belief and at all relevant times herein, was and is a resident of Vancouver, British Columbia, Canada.

9. The true names of Defendants I through X, inclusive, whether individual, corporate, associate or otherwise are unknown to the Plaintiff, who therefore sues each Defendant designated herein as DOE is in some way responsible for the damages claimed by the Plaintiff herein. The Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of Defendants DOES I through X, inclusive, when the identities have been ascertained, to formulate appropriate allegations, and to join such Defendants in this action.

**GENERAL ALLEGATIONS**

**A.    Relationship Between Voip-Pal and Defendants**

10. Voip-Pal is a publically traded corporation incorporated in December 1997 in the State of Nevada and headquartered in Bellevue, Washington.

11. Voip-Pal is a technical leader in the broadband Voice-over-Internet Protocol ("VoIP") market with the ownership and development of a portfolio of leading edge VoIP patent applications.

2

12. Voip-Pal was originally founded by Defendant Kipping who remained its CEO until 2009.

13. Defendant Kwan was the acting CFO for Voip-Pal from 2009 until December 2013, and at all times relevant herein.

14. Even after retiring as Voip-Pal's CEO, Defendant Kipping remained a large investor of Voip-Pal, controlling Voip-Pal's bank accounts and maintaining signatory authority for said accounts, and negotiating the acquisition of suitable businesses in order to grow Voip-Pal and its product offering.

15. In 2013, Defendant Kipping, in order to buttress Voip-Pal's products and VoIP patent application technology, negotiated the acquisition of Digifonica (International) Limited, a privately held company ("Digifonica"), now a wholly owned subsidiary of Voip-Pal.

16. Defendant Kipping is also an officer and the President and CEO of Defendant Locksmith, a beneficial owner of Voip-Pal holding 5% or more of the outstanding Common Stock of Voip-Pal.

17. At all relevant times herein, Defendant Kwan was the accountant for Voip-Pal. Furthermore, Defendant Kwan, like Defendant Kipping, controlled Voip-Pal's bank accounts and maintained signatory authority for said accounts.

18. Defendant Kwan, upon information and belief, is an officer and the owner of TK Investments, LTD., with its principal place of business in British Columbia, Canada. TK Investments is also a shareholder of Voip-Pal.

19. Upon information and belief, between May 2012 to January 2014, Defendants, through a series of deceptive debt conversions, stock issuances, and noncash accounting transactions, systematically conspired, schemed, and defrauded Voip-Pal and the shareholders of Voip-Pal of millions of shares of Voip-Pal stock.

20. Defendants' deceptive and fraudulent conduct is separated, for purposes of this Complaint, into the following fraudulent transactions:

3

   a.  <u>The $1,500,000 Line of Credit</u>.  Transactions involving unapproved debt conversions in connection with a loan of $1,500,000 made by Locksmith to Voip-Pal.

   b.  <u>The Kwan Transaction</u>.  A transaction involving the unapproved transfer of 7,200,000 shares of Voip-Pal common stock to TK Investment.

   c.  <u>The Noncash Transaction</u>.  An unapproved noncash transaction resulting in the conversion of $360,000 to 36,000,000 shares of Voip-Pal common stock.

   d.  <u>Fraudulent Offshore Transfers</u>.  Fraudulent transfers of the above named stock to multiple off-shore holding companies by Defendants.

**B.  The Loan Agreement, Fraudulent Stock Transactions, and Unapproved Debt Conversions.**

21.  Since its incorporation, Voip-Pal's ability to continue operations was dependent upon raising additional working capital, settling outstanding debts, and generating profitable operations.

22.  In order to raise capital, from time to time Voip-Pal would authorize the issuance of additional common stock to be sold.

23.  The issuance of additional common stock resulted in an increase in capital for Voip-Pal to fund operations or settle debt.  However, such issuances have the effect of diluting the equity interests of Voip-Pal's current shareholders.  As such, stock issuances are discussed and must be approved by Voip-Pal's Board of Directors.

24.  Additionally, from time to time, Voip-Pal would enter into loan agreements to raise capital for operations and acquisitions.

25.  On or about August 15, 2013, Voip-Pal and Defendant Locksmith entered into a loan agreement, wherein Locksmith agreed to advance funds to Voip-Pal in the form of a $1,500,000 revolving line of credit (the "$1,500,000 line of credit").  Voip-Pal agreed to pay simple interest at an annual rate of 5.5% on any outstanding amounts of the $1,500,000 line of credit.  <u>The loan agreement did not authorize Defendants to unilaterally issue stock to Locksmith in exchange for debt</u>.

4

26. By October 2013, Voip-Pal had withdrawn approximately $1,404,275.69 of the $1,500,000 line of credit.

27. Absent the knowledge and approval of Voip-Pal and in direct violation of the parties' loan agreement, between August 15, 2013 and October 25, 2013, Defendants Kipping and Kwan orchestrated a series of secret, unilateral, and fraudulent stock issuances to Defendant Locksmith in order to settle the outstanding debt of the $1,500,000 line of credit.

28. Defendants Kipping and Kwan conspired and unilaterally issued to Defendant Locksmith the following stock transactions (the "Fraudulent Stock" transaction, represented in Table 1, below), without the knowledge and approval of Voip-Pal and in direct violation of the parties' previous agreement in connection with the $1,500,000 line of credit:

**Table 1**

*Fraudulent Stock Transactions*

| Date | Shares Issued | Price per Share | Value | Trading Category |
|---|---|---|---|---|
| August 15, 2013 | 29,318,000 | $0.00200 | $58,636.00 | Free Trading |
| October 22, 2013 | 70,000,000 | $0.01277 | $893,900.00 | Restricted |
| October 25, 2013 | 40,000,000 | $0.01276 | $510,375.69 | Restricted |
| October 25, 2013 | 6,682,000 | $0.01276 | $85,258.26 | Free Trading |
| **Total** | **146,000,000** | | **$1,548,169.95** | |

29. Despite the public market's substantially higher price per share for Voip-Pal common stock during the relevant time period (*see* Table 2, below), Defendants Kipping and Kwan, without Voip-Pal's approval, issued millions of shares of Voip-Pal common stock to Defendant Locksmith for a materially and substantially discounted price.

30. In fact, between August 15, 2013 and October 25, 2013, the average price per share of Voip-Pal common stock was eleven cents ($0.11), which was also eleven times the price per share that Defendants Kipping and Kwan had issued to Defendant Locksmith. Table 2, below, provides a representation of the trading price per share of Voip-Pal common stock at the corresponding dates on the public market:

5

**Table 2**

*Share Price by Date*

| Date | Price per Share |
|---|---|
| August 15, 2013 | $0.0725 |
| October 22, 2013 | $0.1980 |
| October 25, 2013 | $0.1950 |
| October 25, 2013 | $0.1950 |
| December 31, 2013 | $0.186 |
| June 6, 2014 | $0.2955 |

31. The issuance of the Fraudulent Stock transactions by Defendants Kipping and Kwan to Defendant Locksmith has largely diluted the equity interests of Voip-Pal and Voip-Pal's current shareholders.

**C.      The Kwan Transaction**

32. In addition to the Fraudulent Stock transactions related to the $1,500,000 line of credit, Defendants Kipping and Kwan, conspired and unilaterally caused that 7,200,000 shares of Voip-Pal common stock be transferred to TK Investments, an entity owned and operated by Defendant Kwan.  Specifically:

   a. 5,200,000 shares of restricted Voip-Pal stock was transferred from Voip-Pal to TK Investments for $0.003 per share on May 31, 2012, and

   b. 2,000,000 shares of restricted Voip-Pal stock was transferred from Voip-Pal to TK Investments for $0.006 per share on May 13, 2013 (collectively, the "Kwan transaction").

33. Defendants Kipping and Kwan effectuated the Kwan transaction without the knowledge and approval of Voip-Pal.

34. Indeed, Defendants Kipping and Kwan were in control of Voip-Pal's banking and accounting activities during the Fraudulent Stock transactions and the Kwan transaction.

35. Defendants Kipping and Kwan were the signatories of Voip-Pal's bank account during the Fraudulent Stock transactions and Kwan transaction.

6

36.	The issuance of the Kwan transaction by Defendants Kipping and Kwan to TK Investments has further diluted the equity interests of Voip-Pal and Voip-Pal's current shareholders.

**D.	Noncash Transaction ($360,000)**

37.	On or about March 12, 2013, Defendants Kipping and Kwan, without Voip-Pal's knowledge or approval, caused that a noncash accounting transaction be entered against Voip-Pal's financial records that showed Voip-Pal buying back 9,000,000 shares of common stock from Defendant Locksmith (the "Noncash Transaction").

38.	No cash was exchanged between Voip-Pal and Defendant Locksmith as a result of the Noncash Transaction.

39.	Rather, Defendants Kipping and Kwan recorded the Noncash Transaction accounting entry as a loan from Defendant Locksmith to Voip-Pal. Specifically, Defendants Kipping and Kwan caused that Voip-Pal's accounting records reflect that Voip-Pal repurchased the 9,000,000 shares from Defendant Locksmith for $0.04 per share or $360,000.

40.	Subsequently, after having caused the Noncash Transaction, Defendants, without the knowledge or approval of Voip-Pal, unilaterally converted the $360,000 sham loan into stock issued from Voip-Pal to Defendant Locksmith (the "$360,000 debt to stock conversion").

41.	As part of the $360,000 debt to stock conversion, Defendants Kipping and Kwan caused that Voip-Pal, without Voip-Pal's knowledge or approval, issue 36,000,000 shares of Voip-Pal common stock to Defendant Locksmith in exchange for settlement of the $360,000 sham loan.

42.	At the time of the of the $360,000 debt to stock conversion, the 36,000,000 shares of Voip-Pal common stock had an actual market value of approximately $4,860,000.

43.	A stock repurchase is generally undertaken by a corporation that has available cash and wishes to reduce stock dilution for its shareholders thereby improving the stock price.

44.	However, on or about March 12, 2013, Voip-Pal did not have sufficient cash on hand to effectuate a repurchase of 9,000,000 shares of its common stock. Moreover, the effect of Defendants actions in converting the $360,000 sham loan into significantly more stock created even greater dilution of Voip-Pal's common stock, thus negatively impacting Voip-Pal and its shareholders.

7

45. Indeed, Defendants Kipping and Kwan were in control of Voip-Pal's banking and accounting activities during the Noncash Transaction and subsequent $360,000 debt to stock conversion.

46. Defendants Kipping and Kwan were the signatories of Voip-Pal's bank account during the Noncash Transaction and subsequent $360,000 debt to stock conversion.

47. Defendants Kipping and Kwan failed to advise Voip-Pal of the Noncash Transaction and subsequent $360,000 debt to stock conversion. Furthermore, Defendants Kipping and Kwan failed to advise Voip-Pal that the Noncash Transaction and subsequent $360,000 debt to stock conversion would not benefit Voip-Pal or its shareholders, and, that in fact, the $360,000 debt to stock conversion would materially harm Voip-Pal and further devalue its shareholders' actual stock holdings.

**E.   Fraudulent Offshore Transfers of Voip-Pal Stock**

48. As a result of Defendant Kipping and Kwan's actions involving the Fraudulent Stock transaction and the $360,000 debt to stock conversion, Defendant Locksmith became the holder of significant shares of stock in Voip-Pal, albeit fraudulently obtained.

49. Upon fraudulently obtaining the stock, Defendants caused the fraudulently issued stock to be partitioned, divided, and transferred to multiple off-shore holding companies, which, upon information and belief, are all managed and owned by Defendants.

50. Upon information and belief, the offshore holding companies managed and owned by Defendants are Defendants Talisman Financial, VHB International, and Cactus Ventures.

51. Indeed, between September 6, 2013 and January 10, 2014, Defendants caused shares of the Fraudulent Stock transaction and the $360,000 debt to stock conversion to be transferred and re-registered under various entities including, Defendants Talisman Financial, VHB International, Cactus Ventures. The foregoing entities are all incorporated and operated out of Belize City, Belize.

52. Upon information and belief, various offshore entities, including Defendants Talisman Financial, VHB International, Cactus Ventures, are being used by Defendant Locksmith, Kipping, and Kwan to obscure and hide unlawful transfers of restricted Voip-Pal stock.

53. Among the fraudulent transfers, Defendants caused the following transfers to off-shore entities:

   a. On or about September 6, 2013, Defendants transferred 29,318,000 restricted shares of Voip-Pal stock from Defendant Locksmith to Defendant VHB International Ltd.

   b. On or about October 23, 2013, Defendants transferred 70,000,000 restricted shares of Voip-Pal stock from Defendant Locksmith to Defendant Talisman Financial, Inc.

   c. On or about November 12, 2013, Defendants transferred 19,025,285 restricted shares of Voip-Pal stock from Defendant Locksmith to Defendant VHB International Ltd.

   d. On or about November 12, 2013, Defendants transferred 6,374,715 restricted shares of Voip-Pal stock from Defendant Locksmith to Cactus Ventures, Inc.

54. Upon information and belief, Defendants Talisman Financial, VHB International, Cactus Ventures, after receiving stock from the Fraudulent Stock transaction and the $360,000 debt to stock conversion, further transferred the restricted stock to other entities to further obscure and hide unlawful transfers of restricted Voip-Pal stock.

55. Defendants – all corporate insiders, beneficial owners, officers, and/or employees of Voip-Pal – while in possession of material, nonpublic information about the Fraudulent Stock and $360,000 debt to stock conversion, failed to report the off-shore transfers to Voip-Pal and securities regulators in violation of and in an attempt to evade U.S. and Nevada securities laws.

## FIRST CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder)**

56. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57. In the manner described herein, Defendants and each of them in connection with the sale of securities involved in the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion and through the use of the means of or instrumentality of

9

interstate commerce or of the mails, directly or indirectly (a) employed devices, schemes, or artifices to defraud Voip-Pal; (b) obtained money or property by means of omissions of material fact; (c) engaged in transactions, practices or courses of business which operated or would operate as fraud or deceit, in violation of §10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5), promulgated thereunder.

58.   Defendants made omissions of material fact relative to the conversion of debt and issuance of stock in connection with the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion.

59.   Defendants conspired and unilaterally issued Voip-Pal stock to Defendant Locksmith and Defendant TK Investments without the knowledge or approval of Voip-Pal.

60.   Indeed, Defendants while in control of Voip-Pal's banking and accounting activities, materially failed to disclose to Voip-Pal the actual price per share of the Fraudulent Stock transactions, the Kwan transaction, and the $360,000 debt to stock conversion, or the negative effect said transactions would have on the value of Voip-Pal's authorized, issued and outstanding stock or Voip-Pal's shareholders' stock holdings.

61.   Defendants, through their conduct and omissions of material fact as described herein, obtained millions of dollars in fraudulent gains from Voip-Pal.

62.   Defendants and each of them knew or were reckless in failing to disclose to Voip-Pal the true nature of the $1,500,000 line of credit, the subsequent debt-to-stock conversions, including, the highly discounted price for the debt-to-share conversion and the noncash transaction.

63.   In furtherance of their omissions and conduct, Defendants and each of them, while in possession of material, nonpublic information about the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion, planned and schemed to hide their conduct by failing to report various off-shore transfers of ill-gotten Voip-Pal stock to Voip-Pal or securities regulators in violation of 1934 Securities and Exchange Act.

64.   Defendants used deceptive devices, including concealing the fraudulent issuance of Voip-Pal stock and modifying the financial records of Voip-Pal to obtain shares of Voip-Pal stock by way of the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock

conversion, on the basis of material nonpublic information, in breach of a duty of trust or confidence that Defendants owed directly, indirectly, or derivatively, to Voip-Pal or the shareholders of Voip-Pal.

65. Defendants, after fraudulently obtaining shares of Voip-Pal stock, by manipulation and deceptive devices, further breached their fiduciary duty to Voip-Pal or the shareholders of Voip-Pal and traded and caused the shares to be transferred to off-shore corporations with a self-serving intent to hide the fraudulent stock transactions.

66. During the period of time stated herein, Defendants and each of them carried out a plan, scheme, and course of conduct which was intended to and did deceive Voip-Pal as alleged herein and caused Voip-Pal to execute the $1,500,000 line of credit. In furtherance of this unlawful plan, scheme, and course of conduct, Defendants and each of them took the actions set forth herein, including, but not limited to the actions related to the Kwan transaction and the $360,000 debt to stock conversion.

67. The omissions of material fact by Defendants during the period of time stated herein were materially misleading because at the time they were omitted, Defendants and each of them knew or recklessly ignored, and thus failed to disclose, the true nature of the debt transactions and resulting debt conversions in connection with Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion.

68. Defendants' omissions were material in that there was a substantial likelihood that Voip-Pal would have considered the information omitted important in deciding whether to execute the $1,500,000 line of credit, or agree to convert debt in connection with the Kwan transaction and the $360,000 debt to stock conversion.

69. Voip-Pal justifiably relied upon Defendants Kipping and Kwan to appropriately and prudently take steps to raise additional working capital, settle outstanding debts, and generate profitable operations for Voip-Pal. Indeed, Voip-Pal justifiably relied upon Defendants' duty to avoid self-dealing to enter into the $1,500,000 line of credit and would not have entered into said agreement with Defendants had Defendants fully represented their intentions to convert the debt to stock based on unreasonable and substantially discounted price per share valuations.

11

70. Moreover, Voip-Pal justifiably relied upon Defendants' duty to act in good faith and in the best interest of Voip-Pal, contrary to Defendants' actions with respect to the Fraudulent Stock transaction, the Kwan transaction, the $360,000 debt to stock conversion, and the fraudulent offshore transfers.

71. Defendants, through their actions involving the Fraudulent Stock, the Kwan transaction, and the $360,000 debt to stock conversion, have significantly devalued the stock of Voip-Pal.

72. Whereas, where the terms of the $1,500,000 line of credit required Voip-Pal to pay simple interest at a modest annual rate of 5.5%, Defendants actions in connection with the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion, mandate that Voip-Pal compensate Defendants greater than twenty-fold for the debt.

73. In furtherance of Defendants Locksmith, Kipping, and Kwan's plan, scheme, and course of conduct which was intended to and did deceive Voip-Pal, Defendants Locksmith, Kipping, and Kwan have attempted to obscure and hide their unlawful actions by transferring the stock obtained by way of the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion, to various offshore entities, including, but not limited to Defendants Talisman Financial, VHB International, Cactus Ventures.

74. Indeed, Defendants Talisman Financial, VHB International, Cactus Ventures and each of them have joined in Defendants Locksmith, Kipping, and Kwan's plan, scheme, and course of conduct to obscure and hide unlawful transfers of restricted Voip-Pal stock and to otherwise conspire to commit unlawful acts in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75. As a result of Defendants omissions and actions, Voip-Pal has incurred millions of dollars in damages and lost significant value to its stock due to Defendants violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76. As a further result of Defendants' conduct, it has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

## SECOND CLAIM FOR RELIEF

**(Fraudulent Omission /
Violation of Nevada Uniform Securities Act, NRS §§ 90.570 & 90.660)**

77. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 76 of the Complaint as if fully set forth herein.

78. Commencing in March 2013, as fully and completely describe above, Defendants made material omissions of fact in an effort to conceal from Voip-Pal the true nature of the Fraudulent Stock transaction, the Kwan transaction, and the $360,000 debt to stock conversion, and those failures to disclose and efforts to conceal constitute a fraud upon Voip-Pal and a violation of NRS 90.570.

79. Defendants knew that their omissions were material.

80. Voip-Pal justifiably relied upon Defendants Kipping and Kwan to appropriately and prudently take steps to raise additional working capital, settle outstanding debts, and generate profitable operations for Voip-Pal.  Indeed, Voip-Pal justifiably relied upon Defendants' duty to avoid self-dealing to enter into the $1,500,000 line of credit and would not have entered into said agreement with Defendants had Defendants fully represented their intentions to convert the debt to stock based on unreasonable and substantially discounted price per share valuations.

81. Moreover, Voip-Pal justifiably relied upon Defendants' duty to act in good faith and in the best interest of Voip-Pal, contrary to Defendants' actions with respect to the Fraudulent Stock transaction, the Kwan transaction, the $360,000 debt to stock conversion, and the fraudulent offshore transfers.

82. As a direct and proximate cause of Defendants' wrongful actions, Voip-Pal has suffered damages in an amount to be proven at trial, but in excess of $75,000.

83. Voip-Pal hereby demands rescission of all debt-to-stock conversions in connection with the Fraudulent Stock, the Kwan transaction, and the $360,000 debt to stock conversion, and all other remedies available in law or equity.

84. The actions of Defendants were intentional, willful and malicious, and Voip-Pal is entitled to punitive and exemplary damages pursuant to NRS 40.005.

85. It has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages pursuant to NRS 90.660.

### THIRD CLAIM FOR RELIEF

### (Breach of Contract)

### – The $1,500,000 Line of Credit Agreement –

86. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87. By way of the $1,500,000 line of credit, Voip-Pal and Defendants entered into a legally enforceable agreement.

88. Defendants willingly entered into the $1,500,000 line of credit.

89. As part of the $1,500,000 line of credit, Defendant Locksmith agreed to advance funds to Voip-Pal and agreed to accept simple interest at an annual rate of 5.5% on any outstanding amounts of the $1,500,000 line of credit. <u>The loan agreement did not authorize Defendants to unilaterally issue stock to Locksmith in exchange for debt</u>.

90. Absent the knowledge or approval of Voip-Pal and in direct violation of the parties' agreement, between August 15, 2013 and October 25, 2013, Defendants Kipping and Kwan breached the agreement by orchestrating a series of secret, unilateral, and fraudulent stock issuances to Defendant Locksmith which led to the issuance of 110,000,000 shares of Voip-Pal stock to Defendant Locksmith.

91. As a direct and proximate result of Defendants' breach, Voip-Pal has suffered and continues to suffer damages in excess of $75,000.00.

92. As a further result of Defendants' conduct, it has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

///

///

///

14

## FOURTH CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**– The $1,500,000 Line of Credit Agreement –**

93. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 92 of the Complaint as if fully set forth herein.

94. Voip-Pal and Defendants are parties to the $1,500,000 line of credit.

95. Defendants owed a duty of good faith to Voip-Pal.

96. Defendants breached that duty by performing in a manner that was unfaithful to the purpose of the agreement, as well as orchestrating a series of secret, unilateral, and fraudulent stock issuances to Defendant Locksmith which led to the issuance of 110,000,000 shares of Voip-Pal stock to Defendant Locksmith.

97. Defendants' breach damaged and continues to damage Voip-Pal in excess of $75,000.00.

98. As a further result of Defendants' conduct, it has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

## FIFTH CLAIM FOR RELIEF

**(Unjust Enrichment)**

**– The Kwan Transaction, Noncash Transaction, and $360,000 Debt to Stock Conversion –**

99. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 98 of the Complaint as if fully set forth herein.

100. Defendants have been unjustly enriched by retaining for their benefit stock obtained in connection with the Kwan transaction, Noncash Transaction, and $360,000 debt to stock conversion.

101. Indeed, Kwan transaction, Defendant Kwan has appreciated the benefit of millions of highly discounted shares of Voip-Pal stock without compensation to Voip-Pal.

102. Furthermore, although no cash was exchanged between Voip-Pal and Defendant Locksmith as a result of the Noncash Transaction, Defendants appreciated the benefit of millions of additional shares of Voip-Pal stock without compensating Voip-Pal.

103. Defendants have accepted and retained the benefit of the shares involved in the Kwan transaction and the $360,000 debt to stock conversion.

104. Defendant appreciated, accepted, and retained the benefit of the shares involved in the Kwan transaction and the $360,000 debt to stock conversion without payment to Voip-Pal.

105. As a result of this breach, Defendants have been and continue to be unjustly enriched in an amount greater than $75,000.00. As such, it is inequitable for Defendants to retain the benefit of the shares involved in the Kwan transaction and $360,000 debt to stock conversion without payment to Voip-Pal or rescission of the ill-gotten shares.

106. As a further result of Defendants' conduct, it has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

## SIXTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

107. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 106 of the Complaint as if fully set forth herein.

108. In their capacity as corporate insiders, beneficial owners, officers, and/or employees of Voip-Pal, Defendants owed a fiduciary duty to Voip-Pal and the shareholders of Voip-Pal.

109. Thus, Voip-Pal had the right to expect trust and confidence in the integrity and fidelity of Defendants, such that Defendant owed to Voip-Pal a fiduciary duty of care and loyalty.

110. Defendants actions as described above, including but not limited to the fraudulent issuance of stock in connection with the Fraudulent Stock, the Kwan transaction, and the $360,000 debt to stock conversion, deceptive devices used to abscond and hide the shares in off-shore corporations, and manipulative financial reporting used to effectuate the Noncash Transaction, constitute a breach of the fiduciary duty that Defendants owed to Voip-Pal.

111. As a result of Defendants' actions as herein described, Voip-Pal suffered and continues to suffer damages in excess of $75,000.00.

112. As a further result of Defendants' conduct, it has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

## SEVENTH CLAIM FOR RELIEF

### (Rescission)

113. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 112 of the Complaint as if fully set forth herein.

114. Defendants by their wrongful omissions and fraudulent conduct have caused significant harm to the value of Voip-Pal stock.

115. Voip-Pal is entitled to rescind and cancel the issuance of all stock obtained by Defendants in connection with the Fraudulent Stock, the Kwan transaction, and the $360,000 debt to stock conversion.

116. Specifically, in addition to any stock transferred to Defendants in connection with the Fraudulent Stock, the Kwan transaction, and the $360,000 debt to stock conversion, Voip-Pal is entitled to cancel and return to its corporate treasury the following transfers by Defendant Locksmith to off-shore entities:

   a. 29,318,000 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Defendant VHB International on September 6, 2013.

   b. 70,000,000 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Talisman Financial, Inc. on October 23, 2013.

   c. 19,025,285 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Defendant VHB International Ltd on November 12, 2013.

   d. 6,374,715 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Cactus Ventures, Inc. on November 12, 2013.

117. It has been necessary for Voip-Pal to retain the services of attorneys to pursue this claim, and, therefore is entitled to attorney fees and costs as damages.

17

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants and requests judgment as set forth below:

1. An award of money damages in excess of $75,000.00 on all claims;

2. For an order rescinding and canceling the issuance of all stock obtained by Defendants in connection with the Fraudulent Stock transaction (146,000,000 shares), the Kwan transaction (7,200,000 shares), and the $360,000 debt to stock conversion (36,000,000 shares).

3. For an order cancelling and returning to Voip-Pal's corporate treasury the following transfers by Defendant Locksmith to off-shore entities:

   a. 29,318,000 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Defendant VHB International on September 6, 2013.

   b. 70,000,000 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Talisman Financial, Inc. on October 23, 2013.

   c. 19,025,285 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Defendant VHB International Ltd on November 12, 2013.

   d. 6,374,715 restricted shares of Voip-Pal stock transferred from Defendant Locksmith to Cactus Ventures, Inc. on November 12, 2013.

4. For a finding that the actions of Defendants were intentional, willful, and malicious, and that Plaintiff is entitled to exemplary and punitive damages;

5. Reasonable attorney's fees and costs incurred herein, and;

///
///
///
///
///
///
///
///

6. For such other and further relief as deemed proper by this Court.

DATED this 2nd day of July, 2015.

      ALVERSON, TAYLOR,
MORTENSEN & SANDERS

/S/  Kurt R. Bonds, Esq.
_____
KURT R. BONDS, ESQ.
Nevada Bar #6228
ADAM R. KNECHT, ESQ.
Nevada Bar #13166
7401 W. Charleston Boulevard
Las Vegas, NV 89117
*Attorneys for Plaintiff*

N:\kurt.grp\CLIENTS\22600\22677\pleading\Voip - Federal Complaint (2).doc