HAROLD P. GEWERTER, ESQ.
Nevada Bar No. 499
ELAINE A. DOWLING, ESQ.
Nevada Bar No. 8051
GEWERTER & DOWLING
1212 S. Casino Center Blvd.
Las Vegas, Nevada 89104
Phone: (702) 382-1714
Fax: (702) 382-1759
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CLARK COUNTY NEVADA**
* * * *

| | |
|---|---|
| VOIP-PAL.COM, a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LOCKSMITH FINANCIAL CORPORATION, INC., a British Columbia entity; TK INVESTMENT, a British Columbia entity; RICHARD G. KIPPING, an individual; TERRY KWAN, an individual; DOES I through X, inclusive; and ROE ENTITIES XI through M, inclusive,<br><br>Defendants. | 2:15-cv-01258-JAD-VCF |

**MOTION TO DISMISS**

Defendants, LOCKSMITH FINANCIAL CORPORATION, INC., TK INVESTMENT, RICHARD G. KIPPING, and TERRY KWAN (collectively, "Defendants"), by and through their attorneys of record, HAROLD P. GEWERTER, ESQ. and ELAINE A. DOWLING, ESQ. of the law firm of GEWERTER & DOWLING, ATTORNEYS AT LAW, hereby files this Motion to Dismiss. This Motion is based on the Memorandum of Points and Authorities herein,

- 1 -

all papers on file with this Court, and any oral argument that this Court may entertain.

Dated this 18th day of September, 2015.

GEWERTER & DOWLING

/s/: Elaine A. Dowling
HAROLD P. GEWERTER, ESQ.
Nevada Bar No. 499
ELAINE A. DOWLING, ESQ.
Nevada Bar No. 8051
1212 S. Casino Center Blvd.
Las Vegas, Nevada 89104
Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Plaintiff's Complaint should be dismissed in its entirety under the Colorado River Abstention Doctrine because the same or similar suit is already taking place in the Eighth Judicial District Court of Nevada.

**II.   STATEMENT OF RELEVANT FACTS**

VOIP-PAL.COM ("VOIP") is a publicly traded corporation. At all relevant times hereto, its board members were Dennis Chang ("CHANG"), Carl Mattera ("MATTERA"), Thomas Sawyer ("SAWYER"), Colin Tucker ("TUCKER"), and Ed Candy ("CANDY"). Moreover, CHANG is also the president of VOIP.

On or about August 15, 2013, LOCKSMITH and VOIP entered into a Loan Agreement in which LOCKSMITH agreed to advance funds to VOIP as loans against a revolving line of credit up to a limit of US $1,500,000.00. CHANG signed this Loan Agreement. By about September 30, 2013, LOCKSMITH loaned VOIP a total of US $1,489,533.95.

(**DEBT SETTLEMENT**)

On or about October 15, 2013, LOCKSMITH and VOIP entered into a Debt Settlement Agreement ("First Debt Settlement Agreement") in which VOIP promised to issue LOCKSMITH 70,000,000 restricted shares in VOIP in exchange for LOCKSMITH canceling VOIP's US $839,900.00 debt. CHANG signed this Debt Settlement Agreement.

1    On or about October 15, 2013, LOCKSMITH canceled VOIP's US $893,900.00 debt and pursuant to a board resolution, VOIP issued 70,000,000 shares in VOIP (40,000,000 restricted shares and 6,682,000 free trading shares) to LOCKSMITH. The board resolution and the authorization to the transfer agent to issue the 70,000,000 shares were agreed to by SAWYER, CHANG, TUCKER, CANDY, and MATTERA.

On or about October 23, 2013, LOCKSMITH and VOIP entered into a Debt Settlement Agreement ("Second Debt Settlement Agreement") in which VOIP promised to issue LOCKSMITH 46,682,000 shares of common stock in exchange for LOCKSMITH cancelling VOIP's US $595,633.95 debt. SAWYER signed this Debt Settlement Agreement.

On or about October 23, 2013, LOCKSMITH canceled VOIP's US $595,633.95 debt and pursuant to a board resolution, VOIP issued 46,682,000 of its shares of common stock to LOCKSMITH. The board resolution and the authorization to the transfer agent to issue the 46,682,000 shares were agreed to by SAWYER, CHANG, TUCKER, CANDY, and MATTERA.

**(CONVERTIBLE LOANS)**

On or about October 18, 2013, VOIP and LOCKSMITH entered into a Convertible Loan Agreement in which LOCKSMITH agreed to loan VOIP US $500,000.00. The Convertible Loan Agreement stated that upon receipt of funds from LOCKSMITH, VOIP would issue and deliver convertible loan notes to LOCKSMITH. The Convertible Loan Agreement was signed by SAWYER and MALAK.

On or about November 5, 2013, LOCKSMITH loaned US $100,000.00 to VOIP ("Note 1"). Note 1 was convertible into 1,250,000 restricted shares in VOIP upon demand of LOCKSMITH. VOIP's board of directors resolved to authorize 1,250,000 shares of common stock to be immediately issued to LOCKSMITH upon demand of LOCKSMITH. Note 1 and the authorization to the transfer agent to issue the 1,250,000 were agreed to by SAWYER, CHANG, TUCKER, CANDY, and MATTERA. On or about November 6, 2013, LOCKSMITH converted VOIP's US $100,000.00 debt into 1,250,000 restricted shares in VOIP.

On or about November 26, 2013, LOCKSMITH loaned US $100,000.00 to VOIP ("Note

1  2"). Note 2 was convertible into 1,250,000 restricted shares in VOIP upon demand of
2  LOCKSMITH. VOIP's board resolved to authorize 1,250,000 shares of common stock to be
3  immediately issued to LOCKSMITH upon demand of LOCKSMITH. Note 2 and the
4  authorization to the transfer agent to issue the 1,250,000 shares were agreed to by SAWYER,
5  CHANG, TUCKER, CANDY, and MATTERA. On or about November 26, 2013, pursuant to
6  Note 2, LOCKSMITH converted VOIP's US $100,000.00 debt into 1,250,000 restricted shares
7  in VOIP.

8  On or about December 27, 2013, LOCKSMITH loaned US $100,000.00 to VOIP ("Note
9  3"). Note 3 was convertible into 1,250,000 restricted shares in VOIP upon demand of
10 LOCKSMITH. VOIP's board of directors resolved to authorize 1,250,000 shares of common
11 stock to be immediately issued to LOCKSMITH upon demand of LOCKSMITH. Note 3 and
12 the authorization to the transfer agent to issue the 1,250,000 shares were agreed to by
13 SAWYER, CHANG, TUCKER, CANDY, and MATTERA. On or about December 31, 2013,
14 pursuant to Note 3, LOCKSMITH converted VOIP's US $100,000.00 debt into 1,250,000
15 restricted shares in VOIP.

16 **(PRESS RELEASES)**

17 On or about October 30, 2014, VOIP produced a press release announcing that its board
18 of directors unanimously passed a resolution to freeze any transfer of approximately
19 100,000,000 shares issued in 2013 to LOCKSMITH.

20 On or about December 18, 2014, VOIP produced a press announcing that its board of
21 directors unanimously passed a resolution to cancel approximately 100,000,000 shares of
22 recently frozen restricted shares of VOIP issued to LOCKSMITH. It also stated that such
23 cancellation required a legal process, and once the legal process was complete, VOIP would
24 instruct its transfer agent to cancel the shares, at which point the shares would be returned to the
25 treasury.

26 On or about December 26, 2014, upon reading the press releases, Corrine Kipping,
27 Power of Attorney for Richard Kipping, emailed the board of VOIP stating "Please advise us
28 with details of what this is about and what you require to have this matter settled without going
to court." On or about December 28, 2014, MALAK responded by email to Corrine Kipping as

to what was required to preclude legal action. The response required LOCKSMITH to execute a Rescission Agreement and Mutual Release (the "Rescission Agreement") stating that LOCKSMITH "received a direct or beneficial interest in [VOIP] pursuant to a stock issuance to pay debts that have been determined not valid debts incurred by [VOIP]." The alleged improper issuance was 95,832,000 restricted shares to LOCKSMITH derived from the following:

      a. 70,000,000 restricted shares from the First Debt Settlement Agreement.

      b. 19,584,500 restricted shares from the Second Debt Settlement Agreement.

      c. 1,250,000 restricted shares from Note 1.

      d. 1,250,000 restricted shares from Note 2.

      e. 1,250,000 restricted shares from Note 3.

The Rescission Agreement also required LOCKSMITH to pay the sum of US $2,000,000.00 to VOIP in same day funds. In MALAK's email response to Corrine Kipping, MALAK also stated that the US $2,000,000.00 payment in the Rescission Agreement "is a fraction of what the court's outcome could award if our action is successful." MALAK's email also stated that Corrine Kipping had until the next day, December 29, 2014, by 5pm to respond.

## III. ARGUMENT

### A. Legal Standard

Under the *Colorado River* doctrine, considerations of wise judicial administration justify a decision to dismiss federal proceedings pending resolution of concurrent state court proceedings. *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032-33 (9th Cir. 2005). To decide whether dismissal is appropriate, the district court must carefully consider "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River v. United States*, 424 U.S. 800, 818 (1976)). The factors that the district court may consider in deciding whether to dismiss a case are: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to

avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *Id.* at 978–79.

### 1. The Eighth Judicial District Court Assumed Jurisdiction Over This Matter First and Has Already Been Active in the Matter.

This factor seeks to determine the relative progress of each case. *ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1150 (C.D. Cal. 2014). Here, the state court action was filed by LOCKSMITH on April 24, 2015. The Defendants in the state court matter (i.e., VOIP and its board of directors) filed a Motion to Dismiss on June 1, 2015 and LOCKSMITH filed its Opposition on June 16, 2015. A hearing on Defendants' Motion to Dismiss was held on July 7, 2015, in which a continuance was granted. Thereafter, LOCKSMITH filed its Amended Complaint on July 8, 2015, Defendants supplemented their Motion to Dismiss on July 17, 2015, and the state court denied Defendants' Motion to Dismiss on August 28, 2015. Conversely, VOIP filed its first amended complaint in this matter on July 10, 2015 and the parties stipulated that Defendants would have until September 18th to respond to the Complaint. Because it is evident that the state action has progressed substantially further than the federal action, this factor weighs in favor of entering a dismissal.

### 2. Dismissing This Case Would Avoid Piecemeal Litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). Here, the issue raised in the state court action is identical to the issue raised in this federal action. Namely, LOCKSMITH contends in state court that it was lawfully issued 95,832,000 shares in VOIP, which VOIP now is trying to freeze and cancel. Conversely, VOIP contends in this federal action that LOCKSMITH was fraudulently granted 146,000,000 shares in VOIP. Although the amount of shares in dispute differ in each action, it is clear that the issue stems from the same exact set of facts. Accordingly, it would be a waste of judicial resources to have two courts deciding the same issue, and present a risk that each court could render a different result.

Furthermore, VOIP should be penalized for not removing the case to federal court. Knowing that both cases are nearly identical and involve the same exact issue, VOIP should've

been attentive to the judicial resources at play and filed a motion to remove the matter to federal court. Instead, VOIP chose to file a separate suit in federal court and ignored the occurrence of judicial resources being wasted as the same exact case is litigated in two tribunals. Because this type of behavior should be deterred, this court should dismiss VOIP's complaint.

### 3. State Law Provides the Rule of Decision on the Merits and State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants.

Courts may weigh these factors in tandem, as they raise overlapping issues. *See e.g.*, *ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d at 1151. Here, VOIP's claims for relief for Fraudulent Omission/Violation of Nevada Uniform Securities Act, NRS §§ 90.570 & 90.660; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Unjust Enrichment; Breach of Fiduciary Duty; and Rescission all arise under state law. State law will therefore provide the rule of decision with respect to these claims.

Moreover, VOIP's securities fraud claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder may be resolved by looking to state law. Specifically, the analog to the federal securities fraud claim that VOIP relies on is NRS 90.570 and NRS 90.660, which is Nevada's securities fraud claim for relief. At the outset, VOIP alleges both federal securities fraud and state securities fraud in its complaint. This demonstrates that VOIP is more than willing to receive a determination of securities fraud under state law.

Moreover, state law can adequately protect the rights of VOIP in alleging federal securities fraud, as Nevada's securities fraud statute is nearly identical to federal securities fraud. VOIP's federal securities fraud claim stems from Rule 10b-5, promulgated by the Securities and Exchange Commission pursuant to section 10(b) of the 1934 Act. Rule 10b-5 makes it unlawful for any person to use "manipulative or deceptive device[s]" in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b). Specifically, one cannot "(a) . . . employ any device, scheme, or artifice to defraud; (b) . . . make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) . . . engage in any act, practice, or course of business which operates or would operate as a fraud or deceit

upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Similarly, Nevada's securities fraud statute, NRS 90.570, states in its entirety the following:

>   **NRS 90.570   Offer, sale and purchase.**   In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:
> 1.   Employ any device, scheme or artifice to defraud;
> 2.   Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or
> 3.   Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

A close reading of the foregoing reveals that Nevada's securities fraud statute is nearly identical to federal securities fraud. VOIP recognizes this fact, as it alleged both claims for relief in its complaint. Therefore, because all of VOIP's claims for relief either arise under state law or can adequately be addressed under state law, this factor weighs in favor of dismissal.

### 4. Denying Federal Jurisdiction Will Avoid Forum Shopping.

"To avoid forum shopping, courts may consider the vexatious or reactive nature of either the federal or the state litigation." *R.R. Street & Co. Inc.,* 656 F.3d at 981. Here, VOIP's actions are an egregious example of forum shopping. VOIP will likely argue that it filed in federal court because the court has exclusive jurisdiction over its securities fraud claim. However, VOIP had relief under state securities law under NRS 90.570 and NRS 90.660, which it also alleges in its federal complaint. As such, VOIP did not exhaust its state court remedies before going to federal court.

Moreover, VOIP's reactive nature of filing a federal suit before any determination on the state court action had been made indicates forum shopping. VOIP's filing of this action in federal court before its motion to dismiss was denied, indicates that VOIP knew that it's motion to dismiss was likely to get denied. As such, the reactive nature of the suit suggests forum shopping, as VOIP knew that the state court wouldn't rule in its favor, and it decided to file in federal court to receive better treatment.

### 5. The State Court Proceedings Will Resolve All Issues Before the Federal Court.

Here, the only issue that is before the federal court is whether the shares that were

granted to LOCKSMITH were legitimate. While VOIP contends that they were fraudulently granted to LOCKSMITH, LOCKSMITH contends that VOIP lawfully transferred the shares. This is the only issue to be resolved in both the state and federal court, and there is no reason as to why a state court would be unable to resolve this issue. As such, this factor weighs in favor of dismissal.

### III. CONCLUSION

Because the foregoing factors weigh in favor of dismissal, Defendants respectfully request that this Court abstain from jurisdiction and deny Plaintiff's complaint in its entirety.

Dated this 18th day of September, 2015.

GEWERTER & DOWLING

/s/: Elaine A. Dowling
HAROLD P. GEWERTER, ESQ.
Nevada Bar No. 499
ELAINE A. DOWLING, ESQ.
Nevada Bar No. 8051
1212 S. Casino Center Blvd.
Las Vegas, Nevada 89104
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

1. On September 18, 2015, I served the following document:

   **MOTION TO DISMISS**

2. I served the above-named document by the following means to the persons listed below:

   a. ECF System pursuant to Notice of Electronic Filing:

Kurt Bonds, Esq.
Adam Knecht, Esq.
7401 W. Charleston Blvd.
Las Vegas, Nevada 89117

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Sonja Howard*
Employee of Gewerter & Dowling